IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. ONEAL SANFORD

**Appeal as of Right from the Criminal Court for Bradley County**
**No. 99-180     Carroll L. Ross, Judge**

**No. E1999-02089-CCA-R3-CD**
**June 18, 2001**

The appellant, Oneal Sanford, was convicted by a jury in the Bradley County Criminal Court of one count of criminally negligent homicide, one count of especially aggravated robbery, one count of facilitation of attempt to commit especially aggravated robbery, one count of facilitation of aggravated assault, and one count of evading arrest. The appellant received a total effective sentence of twenty-six years incarceration. On appeal, the appellant raises the following issues for our review: (1) whether the evidence is legally sufficient to support all of the appellant's convictions, (2) whether the trial court erred by admitting hearsay testimony, and (3) whether the trial court erred in sentencing the appellant. Upon review of the record and the parties' briefs, we affirm the judgments of the trial court and remand this case for a correction of the judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and JAMES CURWOOD WITT, JR., JJ., joined.

Rebble S. Johnson, Cleveland, Tennessee, for the appellant, Oneal Sanford.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Carl F. Petty, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Factual Background

On May 22, 1998, the appellant, Oneal Sanford, and two companions, Orlando Malone and Anthony Reid, drove from Chattanooga to Cleveland, Tennessee, to meet girls and sell drugs. Upon arriving in Cleveland, the trio met three females, including Sue Constance, who agreed to assist them in selling drugs. The appellant and Constance left the group and later sold a ten dollar

rock of crack cocaine. Afterwards, the appellant, Malone, and Reid rendezvoused in the parking lot of Constance's apartment complex.

While standing in the parking lot, the appellant, Malone, and Reid observed Eric Benion, Kenneth Blair, Charles Massengill, and Marcus Williams sitting on the balcony of a second-floor apartment drinking beer. Malone walked up the stairs and asked the four men if they had change for a fifty-dollar-bill. The men replied that they did not. Malone then asked if they had an extra beer and the four men told him no, whereupon Malone rejoined the appellant and Reid in the parking lot.

A short time later, the appellant, Malone, and Reid, armed with loaded weapons, went back up the stairs to the balcony on which the four men were sitting. On the way up the stairs, Malone stated, "I'm going to rob somebody." The three men continued up the stairs, confronted Benion, Blair, Massengill, and Williams, and ordered them to lie on the floor. Benion ran into Williams' apartment, but Malone apprehended him and brought Benion back onto the balcony. Massengill was allowed to remain seated in a chair on the balcony.

Malone searched Benion's pockets and took approximately $25. He then searched Williams' pockets but found no money. Blair was also searched. Meanwhile, the appellant held a gun to Massengill's right eye and demanded that Massengill hand over his money. Massengill had only seventy-nine cents, which he gave to the appellant. The appellant asked, "Is that all the money you've got?" Blair, who was still prone on the balcony, mumbled something. At that point, the appellant and Reid turned and began firing their guns.[1] Reid shot Williams in the leg and in the lower back. Benion ran inside Williams' apartment and jumped out of the second-floor window. Benion was shot in the hand, but by whom is unclear. Reid also shot Blair in the head. The appellant shot Massengill in the eye.

Following the shooting, the trio ran to their vehicle and quickly drove away. A short time later, they were spotted by two police cruisers who activated their blue lights and their sirens. A chase ensued, and the police eventually forced Reid to stop the car. Once the vehicle stopped, the appellant and Reid ran from the vehicle while Malone remained in the car. The police chased and apprehended the appellant and Reid.

Benion was treated for his injury on the scene. He testified at the appellant's trial that he continues to have cramping in his hand associated with his injury. Williams was taken to the hospital and treated for his injuries. Massengill was also treated for his wound at the hospital. He testified at trial that the bullet could not be removed from his body and is visible in his neck. He also testified that he continues to have blurred vision and pain as a result of his injury. Blair did not survive his gunshot wound.

---

[1] The appellant admitted at trial that he was the first to shoot his gun, but he contended that he only fired into the air. Additionally, the appellant claimed that Malone did the remainder of the shooting, but Reid did not fire his gun.

The appellant was indicted for the first degree felony murder of Blair, the especially aggravated robbery of Massengill, the attempted especially aggravated robbery of Williams, the aggravated robbery of Benion, and felony evading arrest. A jury in the Bradley County Criminal Court convicted the appellant of one count of criminally negligent homicide (Blair), a class E felony; one count of especially aggravated robbery (Massengill), a class A felony; one count of facilitation of attempt to commit especially aggravated robbery (Williams), a class C felony; one count of facilitation of aggravated assault (Benion), a class D felony; and one count of evading arrest, a class A misdemeanor.

The trial court sentenced the appellant to the following terms of incarceration in the Tennessee Department of Correction: two years for the criminally negligent homicide conviction, twenty years for the especially aggravated robbery conviction, six years for the facilitation of attempt to commit especially aggravated robbery conviction, and four years for the facilitation of aggravated assault conviction. The trial court also sentenced the appellant to eleven months and twenty-nine days incarceration in the Bradley County Jail for the evading arrest conviction. The trial court ordered the appellant to serve his sentence for especially aggravated robbery concurrently with his sentence for criminally negligent homicide. Additionally, the trial court ordered the appellant's sentences for facilitation of attempt to commit especially aggravated robbery, facilitation of aggravated assault, and evading arrest to run concurrently. The trial court further ordered the appellant's sentences for especially aggravated robbery and criminally negligent homicide to run consecutively to the three remaining sentences, for a total effective sentence of twenty-six years incarceration. On appeal, the appellant raises the following issues for our review: (1) whether the evidence is legally sufficient to support all of the appellant's convictions, (2) whether the trial court erred by admitting hearsay testimony, and (3) whether the trial court erred in sentencing the appellant.

## II. Analysis
### A. Sufficiency of the Evidence

The appellant first challenges the sufficiency of the evidence supporting his convictions. On appeal, this court generally grants considerable weight to the verdict of a jury in a criminal trial. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Moreover, because a jury conviction essentially removes the presumption of the appellant's innocence and replaces it with a presumption of guilt, the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. Id. To this end, the appellant must establish that no reasonable trier of fact could have found the essential elements of the offense in question beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Conversely, the State, as the prevailing party in the trial court, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact and not this court. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

We begin by analyzing the appellant's conviction of the especially aggravated robbery of Massengill. Tenn. Code Ann. § 39-13-403 (1997) provides:

> (a) [e]specially aggravated robbery is robbery as defined in [Tenn. Code Ann.] § 39-13-401:
> (1) [a]ccomplished with a deadly weapon; and
> (2) [w]here the victim suffers serious bodily injury.

Robbery is the intentional or knowing theft of property from the person of another by violence or by putting the person in fear. Tenn. Code Ann. § 39-13-401(a) (1997).

Massengill testified that the appellant held a loaded gun to Massengill's eye and demanded that he turn over his money to the appellant. The appellant was angered by the insignificant amount of cash Massengill was able to provide and ultimately shot him in the eye. This testimony supports the appellant's commission of a robbery with a deadly weapon. Moreover, the element of "serious bodily injury" is satisfied by Massengill's testimony that the appellant shot him in the eye, that the injury created a substantial risk of Massengill's death, and that the gunshot permanently and substantially impaired Massengill's vision. Tenn. Code Ann. § 39-11-106 (a)(34) (1997); see also State v. Holland, 860 S.W.2d 53, 59-60 (Tenn. Crim. App. 1993). Accordingly, taken in the light most favorable to the State, the evidence is more than sufficient to uphold the appellant's conviction of especially aggravated robbery. See State v. Johnson, 910 S.W.2d 897, 899-900 (Tenn. Crim. App. 1995); State v. Zirkle, 910 S.W.2d 874, 879-881 (Tenn. Crim. App. 1995).

Next we turn to the appellant's conviction of the criminally negligent homicide of Blair. In order to sustain the appellant's conviction of criminally negligent homicide, the State needed to prove that the appellant engaged in criminally negligent conduct which resulted in the death of another person. Tenn. Code Ann. § 39-13-212(a) (1997). An appellant engages in criminally negligent conduct when that appellant

> acts with criminal negligence with respect to the circumstances surrounding that person's conduct or the result of that conduct when the person ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(d) (1997).

The State argues that the appellant is criminally responsible for the actions of Malone and Reid. An appellant is criminally responsible for the actions of another when "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, [the appellant] solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2) (1997). The State's theory at trial was that the appellant aided or attempted to aid Reid and Malone in the commission of the robbery which ultimately

resulted in the death of Blair. We conclude that there is sufficient evidence to sustain the appellant's conviction of criminally negligent homicide.

The evidence supports a finding that the appellant's co-defendants, Reid and Malone, acted with criminal negligence when they took guns with them to commit the robbery of Benion, Blair, Massengill, and Williams. State v. Frank Whitmore, No. 03C01-9404-CR-00141, 1997 WL 334904, at *19 (Tenn. Crim. App. at Knoxville, June 19, 1997). The co-defendants "ought to have been aware of a substantial and unjustifiable risk that [they] would . . . be in a situation where the [guns] might be used against the victim[s], causing [a] death." Id. Moreover, the appellant accompanied his co-defendants to the balcony where the four victims were seated, knowing that Malone intended to rob someone. When the appellant is aware of the intentions of his co-defendants and proceeds to aid or attempt to aid in their endeavor, the appellant is responsible for all natural and probable consequences of his co-defendant's actions during the commission of the crime. State v. Carson, 950 S.W.2d 951, 956 (Tenn. 1997). Specifically, the natural and probable consequences rule

> extends the scope of criminal liability to the target crime intended by
> a defendant as well as to other crimes committed by a confederate
> that were the natural and probable consequences of the commission
> of the original crime.

State v. Howard, 30 S.W.3d 271, 276 (Tenn. 2000). Again, the three defendants went up the stairs, armed with loaded weapons, with the intention of robbing the victims. It is a natural and probable consequence that one or all of the defendants would use their weapons during the commission of the armed robbery. See Carson, 950 S.W.2d at 956; see also Whitmore, No. 03C01-9404-CR-00141, 1997 WL 334904, at * 19. Accordingly, we find that there was sufficient evidence to convict the appellant of criminally negligent homicide under the theory of criminal responsibility.

The appellant also contests his conviction of facilitation of the attempt to commit the especially aggravated robbery of Williams. Again, we note that especially aggravated robbery is the knowing theft of property from a person by violence or putting the person in fear, which is accomplished with a deadly weapon and where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-401 and 39-13-403. Tenn. Code Ann. § 39-12-101 (1997) defines criminal attempt in the following manner:

> (a) [a] person commits criminal attempt who, acting with the kind of
> culpability otherwise required for the offense:
>
> (3) [a]cts with intent to complete a course of action or cause a result
> that would constitute the offense, under the circumstances
> surrounding the conduct as the person believes them to be, and the
> conduct constitutes a substantial step toward the commission of the
> offense.

Additionally, a person is guilty of the facilitation of a felony if, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [Tenn. Code Ann.] § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a) (1997). In his statement to the police, the appellant

admitted that he knew that Malone was going up the stairs to rob someone. Malone caused Williams to fear bodily injury by displaying a deadly weapon. Malone searched Williams' pockets, but found no money. During the course of the robbery, Williams was shot in the leg and in the back. Furthermore, the appellant assisted in the commission of the robbery by holding one victim at gunpoint while his co-defendants robbed the other victims. Thus, we find that the evidence was sufficient to convict the appellant of the facilitation of the attempted especially aggravated robbery of Williams. See State v. Anthony T. Jones, No. 03C01-9807-CR-00245, 1999 WL 538389, at *3 (Tenn. Crim. App. at Knoxville, July 14, 1999); State v. Jennifer Strevel, No. 03C01-9606-CR-00249, 1997 WL 154077, at *4 (Tenn. Crim. App. at Knoxville, April 3, 1997).

The appellant was also convicted of facilitating the aggravated assault of Benion. Tenn. Code Ann. § 39-13-102(1997) provides:

> (a) [a] person commits aggravated assault who:
> (1) [i]ntentionally or knowingly commits an assault as defined in [Tenn. Code Ann.] § 39-13-101 and:
> (A) [c]auses serious bodily injury to another; or
> (B) [u]ses or displays a deadly weapon.

An appellant commits assault when the appellant "[i]ntentionally, knowingly or recklessly causes bodily injury to another" or "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(1) and (2) (1997).

Again, we note that the appellant knew that Malone planned to rob one or more of the victims. The appellant provided assistance in the robbery by holding one of the victims at gunpoint. The appellant is responsible for the actions of his co-defendant in the commission of this offense. Benion testified that Malone pointed a gun at him and demanded his money. Benion handed his cash to Malone. Furthermore, Benion was shot in his right hand when he tried to escape the gunfire. We conclude that the jury could reasonably find the appellant guilty of facilitating the aggravated assault of Benion based upon Malone's threatening Benion with the gun. See State v. Darrell Jennings, No. W1999-01036-CCA-R3-CD, 2000 WL 1863515, at *3 (Tenn. Crim. App. at Jackson, December 1, 2000); State v. Johnny E. McClain, Jr., No.01C01-9607-CR-00301, 1997 WL 738579, at *3-4 (Tenn. Crim. App. at Nashville, December 1, 1997).

The appellant also claims that there was insufficient evidence to convict him of evading arrest. Tenn. Code Ann. § § 39-16-603(a)(1) (1997) states that

> it is unlawful for any person to intentionally flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:
> (A) [k]nows the officer is attempting to arrest the person.

The officers testified at trial that they activated the blue lights and sirens on their police cruisers while they pursued the appellant and his co-defendants. The car chase lasted several minutes. After the car stopped, the appellant and Reid fled the vehicle and ran from the uniformed police officers. The evidence is sufficient to sustain the appellant's conviction of evading arrest. See State v. Black, 924 S.W.2d 912, 915 (Tenn. Crim. App. 1995). This issue is without merit.

## B. Hearsay Statements

The appellant also contends that the trial court erred by admitting the testimony of Benion concerning statements made by the defendants during the robbery. The appellant claims that, because Benion could not specifically identify which defendant made the statements, the trial court should have excluded the testimony as hearsay. We note that the appellant has not cited any authority in support of his argument on this issue. Therefore, this issue could be considered waived. State v. Killebrew, 760 S.W.2d 228, 231-232 (Tenn. Crim. App. 1988). Nevertheless, we will address this issue.

The appellant's argument concerns two statements made by Benion during his direct testimony. The first statement is as follows:

Benion: The next thing we knowed (sic), we saw the – they came up, running up on the porch with the guns, telling us to get down on the floor.
. . . .
Trial Court: Do you know which one said that?
Benion: No, I can't exactly say which one said it. I just heard this all– it was more than one. I can't determine their voices.

Additionally, the appellant complains that the trial court erred when it allowed Benion to testify that either the appellant or Reid said, "Is this all the [] money you've got?" The State responds that neither statement was hearsay because the information was not offered to prove the truth of the matter asserted. We agree.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions to the rule against hearsay. Tenn. R. Evid. 802. However, there are some categories of statements that are not considered hearsay. For example, "[o]rders or instructions are often not hearsay because they are not offered to prove the truth of their content, and similarly, questions are usually not hearsay." NEIL P. COHEN, ET AL., TENNESSEE LAW OF EVIDENCE, § 801.9 at 500 (Michie ed., 3d ed. 1995) (footnote omitted); see also United States v. Shepherd, 739 F.2d 510, 514 (10th Cir. 1984). In fact, this court has recognized that "[c]ommands or instructions are not hearsay because they are not offered to prove the truth of the matter asserted." State v. Reginald S. Mabone, No. 02C01-9203-CR-00054, 1993 WL 270618, at *1 (Tenn. Crim. App. at Jackson, July 21, 1993). Accordingly, we conclude that Benion's testimony regarding the order to lie down is not hearsay and was properly admitted by the trial court. Additionally, the question "Is this all the [] money you've got?" was not offered to prove the truth of the matter asserted and is therefore also not hearsay. Thus, we conclude that the trial court also correctly admitted this statement.

## C. Sentencing

This court reviews challenges to the length, range, or manner of service of a sentence de novo. Tenn. Code Ann. § 40-35-401(d) (1997). Moreover, if the record reveals that the trial court properly considered the sentencing principles and all relevant facts and circumstances, this

court will review the trial court's determinations with a presumption of correctness. Id.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). We note that the trial court did not specify which enhancement factors apply to each offense. Therefore, we will review the trial court's findings de novo without a presumption of correctness. State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Regardless, the burden is on the appellant to demonstrate the impropriety of his sentences. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102,-103,-210 (1997). See also Ashby, 823 S.W.2d at 168. Moreover, Tenn. Code Ann. § 40-35-210 provides:

> (c) [t]he presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors.
> (d) [s]hould there be enhancement but no mitigating factors, then the court may set the sentence above the minimum in that range but still within the range.
> (e) [s]hould there be enhancement and mitigating factors, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors.

### 1. Length of Sentences

The appellant argues that the trial court erred in finding five enhancement factors and no mitigating factors. However, the appellant makes no references to the record and cites no authority in support of his position. Accordingly, the appellant has waived this issue. Killebrew, 760 S.W.2d at 231-232. Regardless, we will assess the merits of the appellant's claim.

The trial court applied the following enhancement factors to the appellant's convictions: (1) the appellant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (3) the offenses involved more than one (1) victim; (10) the appellant had no hesitation about committing crimes when the risk to human life was high; (13) the felonies were committed while on any of the following forms of release status if such release is from a prior felony conviction: (C) probation; and (16) the crimes were committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114 (1997). The trial court found that no mitigating factors applied to the appellant.

a. Enhancement Factors

The appellant concedes that the trial court correctly applied enhancement factor (1) to all of his felony convictions because he has a history of criminal behavior. Id. The appellant's presentence report reflects that the appellant has a prior felony conviction of forgery. Additionally, during the trial, the appellant admitted to making one drug sale on the night of the robberies and also admitted to selling drugs in the past. We agree that enhancement factor (1) applies to each of the appellant's felony convictions.

The State contends that the trial court erred in failing to find that the appellant was a leader in the commission of the offense. Tenn. Code Ann. § 40-35-114(2). It is well established that "enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be 'a' leader." State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). We agree that this enhancement factor applies to the appellant's conviction of the especially aggravated robbery of Massengill because the appellant held a gun on Massengill and actively demanded and removed his money. See State v. Terry Antonio Lawrence, No. 01C01-9603-CR-00122, 1997 WL 578995, at *3 (Tenn. Crim. App. at Nashville, September 19, 1997). Moreover, the appellant admitted that he fired the first shot and that his co-defendant(s) began shooting only after his initial shot. Additionally, we find that, given the appellant's active participation in the incident, the appellant was also the leader in the criminally negligent homicide of Blair, the facilitation of the attempted especially aggravated robbery of Williams, and the facilitation of the aggravated assault of Benion. See State v. Robinson, 971 S.W.2d 30, 48 (Tenn. Crim. App. 1997).

We also note that enhancement factor (8) applies to the appellant. Tenn. Code Ann. § 40-35-114(8). The record reflects that the appellant was on probation at the time he committed the instant offenses. While the appellant being on probation during the commission of the instant offense does not constitute a "previous history of unwillingness to comply with the conditions of a sentence involving release in the community," see State v. Hayes, 899 S.W.2d 175, 185-186 (Tenn. Crim. App. 1995), the appellant admitted at trial that he had sold crack cocaine earlier that day. Thus, the appellant sold crack cocaine while he was on probation for a felony offense. This is sufficient to warrant the application of enhancement factor (8). See State v. Randal A. Thies, No. 02C01-9708-CC-00299, 1998 WL 391813, at *4 (Tenn. Crim. App. at Jackson, April 24, 1998); State v. Charles Steve Miller, No. 03C01-9606-CR-00241, 1997 WL 585749, at *3 (Tenn. Crim. App. at Knoxville, September 23, 1997).

The appellant also contends that the trial court erred in applying enhancement factor (10) to his felony convictions because the element of high risk to human life is inherent in each of his felony convictions. Tenn. Code Ann. § 40-35-114(10). The State agrees with the appellant that the trial court improperly applied this enhancement factor. However, we respectfully disagree.

Regarding the appellant's conviction of criminally negligent homicide, we preface our analysis by noting that this court has generally held that enhancement factor (10) is not applicable in a criminally negligent homicide case "because a high risk to human life always

accompanies the commission of a homicide." State v. William Jason McMahan, No. 03C01-9707-CR-00262, 1999 WL 177590, at *18 (Tenn. Crim. App. at Knoxville, March 31, 1999). However, the application of enhancement factor (10) may be applied to an offense when the life of someone other than the victim is put at risk. See State v. Bingham, 910 S.W.2d 448, 453 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000); State v. Devon Eugene Smith, No. 02C01-9608-CC-00278, 1997 WL 675197, at *3 (Tenn. Crim. App. at Jackson, October 29, 1997). Accordingly, "we must determine whether there is proof in the record that the appellant created a high risk to the life of a person other than the victim." Bingham, 910 S.W.2d at 453.

In the instant case, the appellant was found to be criminally responsible for his co-defendant(s) commission of the criminally negligent homicide of Blair. However, the shooting created not only a great risk to the life of Blair, the victim of the criminally negligent homicide, but also to the lives of Benion, Massengill, and Williams. See State v. Makoka, 885 S.W.2d 366, 373 (Tenn. Crim. App. 1994). Thus, because there was a great risk to the life of someone other than the victim of the criminally negligent homicide, we conclude that the trial court properly applied this enhancement factor to the appellant's conviction of criminally negligent homicide. See State v. Ladonte Montez Smith, No. M1997-00087-CCA-R3-CD, 1999 WL 1210813, at *21 (Tenn. Crim. App. at Nashville, December 17, 1999), perm. to appeal denied, (Tenn. 2000).

Additionally, a great risk to human life is generally inherent in the offense of especially aggravated robbery. See State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995). However, as we earlier stated, enhancement factor (10) may still be applied when there is great risk to the life of someone other than the victim of the offense. See State v. Michael Lebron Taylor, No. 03C01-9810-CR-00366, 1999 WL 692579, at *6 (Tenn. Crim. App. at Knoxville, September 8, 1999), perm. to appeal denied, (Tenn. 2000); Cf. State v. Reginald Tyrone Donnell, No. M1999-02184-CCA-R3-CD, 2000 WL 1763685, at *10 (Tenn. Crim. App. at Nashville, November 30, 2000). Specifically this court has stated:

> While this Court has consistently held that this factor should not be applied when the only person subject to being injured is the victim, this factor is not inherent . . . when other people present could have been injured.

Makoka, 885 S.W.2d at 373.

During the commission of the appellant's especially aggravated robbery of Massengill, the lives of Benion, Blair, and Williams were also put at risk. See State v. Gerald Leander Henry, No. 01C01-9505-CR-00161, 1999 WL 92939, at *36 (Tenn. Crim. App. at Nashville, February 25, 1999) (finding that "both [victims] were in direct peril when the defendant committed the offenses against the other [victim]," warranting the application of enhancement factor (10)). Additionally, the lives of Blair, Benion, and Massengill were in danger during the attempted especially aggravated robbery of Williams, which offense was facilitated by the appellant. Id. Accordingly, we find that the trial court properly applied enhancement factor (10) to the appellant's

convictions of the especially aggravated robbery of Massengill and the facilitation of the attempted especially aggravated robbery of Williams.

This court has also found that enhancement factor (10) is typically inherent in the offense of aggravated assault. See State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994). Yet enhancement factor (10) may also be properly applied to the offense of aggravated assault when there is risk to someone other than the victim of the aggravated assault. See State v. Thomas R. Baldwin, No. 01C01-9612-CR-00530, 1998 WL 426199, at *7 (Tenn. Crim. App. at Nashville, July 29, 1998). In the present case, the lives of Blair, Massengill, and Williams were in danger while Malone committed the aggravated assault of Benion. We again note that this aggravated assault was facilitated by the appellant. Therefore, we conclude that the trial court properly applied this enhancement factor to the appellant's conviction of the facilitation of the aggravated assault of Benion.

The appellant concedes that the trial court correctly applied enhancement factor (13) to each of his felony convictions because he was on probation for a felony forgery offense at the time of the instant offenses. Tenn. Code Ann. § 40-35-114(13). Accordingly, we find that enhancement factor (13) also applies to all of the appellant's felony convictions.

Next, the appellant argues that the trial court erred by applying enhancement factor (3) to his felony convictions because he received a separate conviction for each victim involved in the incident. Id. The State concedes that this factor was improperly applied by the trial court. We agree. As this court has previously found, "[enhancement factor (3)] may not be applied to enhance a sentence when the appellant is separately convicted of the offenses committed against each victim." State v. Williamson, 919 S.W.2d 69, 82 (Tenn. Crim. App. 1995). Accordingly, we find that the trial court erred in applying enhancement factor (3) to all of the appellant's felony convictions.

The appellant also contends that the trial court erred in applying enhancement factor (16) to his felony convictions because the great potential for bodily injury to a victim is an essential element of his convictions of criminally negligent homicide, especially aggravated robbery, facilitation of attempted especially aggravated robbery, and facilitation of aggravated assault. Tenn. Code Ann. § 40-35-114. The State also claims that the trial court incorrectly applied this enhancement factor to the appellant's convictions.

Initially we agree that enhancement factor (16) is generally an essential element of the offenses of criminally negligent homicide, especially aggravated robbery, and aggravated assault. See Nix, 922 S.W.2d at 903; Hill, 885 S.W.2d at 363; State v. Derek Denton, No. 02C01-9409-CR-00186, 1996 WL 432338, at *12 (Tenn. Crim. App. at Jackson, August 2, 1996). However, we note that "there is a split among panels of this court whether [enhancement factor (16)] applies where individuals other than the victim are placed at risk." Smith, No. M1997-00087-CCA-R3-CD, 1999 WL 1210813, at *21. Specifically,

> [w]ith regard to factor (16), this Court has previously held this factor
> is also properly applicable "in situations where individuals other than

the victim are in the area and are subject to injury." State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. [1995]). . . . However, a contrary view was expressed in State v. Charles Justin Osborne, C.C.A. No. 01C01-9806-CC-00248, 1999 Tenn. Crim. App. LEXIS 465, at *3 (Tenn. Crim .App. filed May 12, 1999, at Nashville). In Osborne, this Court held that Tenn. Code Ann. § 40-35-114(16) may not be applied merely upon a showing that persons other than the victim of the charged offense were subjected to a risk of harm.

State v. Stacy Allen Bullard, No. E1999-00796-CCA-R3-CD, 2000 WL 277314, at *8 (Tenn. Crim. App. at Knoxville, March 15, 2000), perm. to appeal denied, (Tenn. 2000). We decline to decide this issue at this time as, even without the application of enhancement factor (16), the presence of the remaining enhancement factors justify the length of the appellant's sentences.

### b. Mitigating Factors

The appellant also argues that the trial court erroneously failed to apply the following mitigating factors: (4) the appellant played a minor role in the commission of the offenses; (6) the appellant, because of youth, lacked substantial judgment in committing the offenses; (9) the appellant assisted the authorities in uncovering offenses committed by other persons or in detecting or apprehending other persons who had committed the offenses; and (11) the appellant, although guilty of the crimes, committed the offenses under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. Tenn. Code Ann. § 40-35-113 (1997). The State contends that the trial court correctly found that no mitigating factors applied to the appellant. We agree.

The appellant first claims that the trial court should have found that he played a minor role in the commission of the offenses. Id. at (4). However, the facts adduced at trial demonstrate that the appellant played an active and vital role in the commission of all of the offenses of which he was convicted. The appellant held a gun to Massengill's eye, demanded cash, and took Massengill's money. The appellant controlled one of the victims while his co-defendants robbed or attempted to rob the other three victims at gunpoint. Additionally, the appellant initiated the shooting and shot Massengill in the eye himself before the trio made their escape. See State v. Walter Lee Allen, No. 03C01-9807-CC-00257, 2000 WL 276840, at *7 (Tenn. Crim. App. at Knoxville, March 15, 2000), perm. to appeal granted, (Tenn. 2000). Accordingly, we agree with the trial court that the appellant did not play a minor role in the commission of any of the offenses.

The appellant also claims that the trial court should have found that the appellant lacked substantial judgment in committing his crimes because of his youth. Tenn. Code Ann. § 40-35-113(6). In determining the applicability of this mitigating factor, the trial court should consider "the [appellant's] age, education, maturity, experience, mental capacity or development, and any other pertinent circumstance tending to demonstrate the [appellant's] ability or inability to appreciate the nature of his conduct." State v. Adams, 864 S.W.2d 31, 33 (Tenn. 1993). The appellant was twenty-one years and four months old at the time of the offenses. He had completed high school through the ninth grade. The appellant presents no argument as to how his age contributed to his

-12-

lack of judgment. See State v. Mason Thomas Wilbanks, No. 01C01-9804-CR-00184, 1999 WL 325958, at *5 (Tenn. Crim. App. at Nashville, May 21, 1999). Accordingly, we conclude that this mitigating factor does not apply to any of the appellant's convictions.

Next, the appellant asserts that he assisted the police in apprehending his co-defendants. Tenn. Code Ann. § 40-35-113(9). However, the record reveals that the appellant initially made two false statements to the police concerning this incident. See State v. Gregory Maurice Brooks, No. 02C01-9411-CV-00261, 1995 WL 422799, at *4 (Tenn. Crim. App. at Jackson, July 19, 1995). This court does not consider lying to the police to be "assisting the authorities." Additionally, the police knew independently, from the statements of the surviving victims, that the appellant and his co-defendants committed the crimes in question. Therefore, the trial court correctly refused to apply this mitigating factor to the appellant.

Additionally, the appellant contends that he did not possess a sustained intent to violate the law during the commission of the offenses. We disagree. The appellant knew that his armed co-defendants intended to rob the four victims. Nevertheless, the appellant joined his co-defendants in the confrontation of the victims, and he actively participated in the robbery of the victims. See State v. Michael Waggoner, No. 85-233-III, 1985 WL 3649, at *2 (Tenn. Crim. App. at Nashville, November 20, 1985). We conclude that his actions demonstrate a sustained intent to violate the law. This issue is without merit.

Furthermore, in sentencing the appellant for misdemeanor evading arrest, the "trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). We find that the trial court did consider the sentencing principles and enhancement and mitigating factors when sentencing the appellant to eleven months and twenty-nine days incarceration in the Bradley County Jail. Therefore, we affirm the appellant's sentence for misdemeanor evading arrest.[2]

Finally, we note that two of the appellant's judgments of conviction have been entered incorrectly. The transcripts of the trial and of the sentencing hearing indicate that the appellant was convicted of facilitation of attempt to commit especially aggravated robbery for count three and facilitation of aggravated assault for count four. The trial court correctly sentenced the appellant for these two offenses. However, the appellant's judgments incorrectly reflect that the appellant was convicted of attempted aggravated robbery for count three and attempted robbery for count four.

---

[2] Although the appellant does not raise the issue in his brief, we note that, when the trial court imposed consecutive sentences upon the appellant due to the appellant's status as a dangerous offender, the trial court erred in failing to "make specific findings regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(4)." State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999); see also State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). However, as the trial court also imposed consecutive sentences because the appellant was on probation at the time the current offenses were committed, the trial court was not required to find the presence of the Wilkerson factors. Id. at 461; see also Tenn. Code Ann. § 40-35-115(6) (1997). Accordingly, we uphold the appellant's consecutive sentences.

-13-

Moreover, the judgment on count four indicates that the appellant was sentenced as an especially mitigated offender. The transcript of the sentencing hearing reflects that the appellant was instead sentenced as a Range I standard offender on count four. As this court has previously observed, the transcript controls when there is a discrepancy between the transcript of a proceeding and the judgment as entered. See State v. Davis, 706 S.W.2d 96, 97 (Tenn. Crim. App. 1985). Accordingly, we remand to the trial court for a correction of the judgments on counts three and four.

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court and remand this case to the trial court for correction of the appellant's judgments of conviction on counts three and four.


_____
NORMA McGEE OGLE, JUDGE